IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| LORENZO LARA-HAYNES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:19-CV-056-Z-BR |
| | § | |
| CIPRIANO GARCIA and AARON HERRERA, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO GRANT DEFENDANTS GARCIA AND HERRERA'S JOINT MOTION FOR SUMMARY JUDGMENT**

Lorenzo Lara-Haynes ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. section 1983. (ECF 3). Plaintiff is currently incarcerated in the Texas Department of Criminal Justice ("TDCJ") Allred Unit, but was incarcerated at the TDCJ Bill Clements ("Clements") Unit in Amarillo, Texas at the time of the incident alleged in the Complaint. Defendants Garcia and Herrera filed a Joint Motion for Summary Judgment, Brief in Support and Appendix, asserting qualified immunity as to Plaintiff's claims. (ECF 21–22). Plaintiff did not file any Response to the Motion for Summary Judgment. Plaintiff's claims against Defendant Richardson were previously dismissed. (ECF 26).

The undersigned United States Magistrate Judge is of the opinion that Defendants Garcia and Herrera's Joint Motion for Summary Judgment should be GRANTED, and Plaintiff's Complaint should be DISMISSED with prejudice.

## I.   FACTUAL BACKGROUND

On January 23, 2019, the Clements Unit was placed on lockdown, and a "shakedown" search of various cells was conducted by numerous correctional officers (including Defendants

Garcia and Herrera). (ECF 3 at 4) By his Complaint, Plaintiff asserted that all Defendants were acting a part in a conspiracy orchestrated by (dismissed) Defendant Richardson, the Senior Warden at the Clements Unit, who was "embarrassed" that contraband had made its way into the Clements Unit and therefore ordered the "shakedown" searches of inmate cells to "terrorize" inmates (in general, not just Plaintiff) for Defendant Richardson's "embarrassment." *Id*. at 5.

Plaintiff claims that while the searches were being conducted he and other inmates "heard" of some of the terrible "offenses" by correctional officers during this "rampage," including unnecessary use of force, unlawful confiscation and destruction of personal property and retaliation. *Id*. Plaintiff claims that by the time the correctional officers reached the E-pod, where he was housed, he feared for his physical safety and his property. *Id*. Plaintiff acknowledges he refused to exit his cell when ordered to do so by officers. *Id*. Plaintiff stated that Lieutenant Pozos (not a Defendant) came to investigate and ultimately resolved the issue by searching Plaintiff's cell himself, along with an unidentified sergeant. *Id*.

While Plaintiff's cell was searched, he was stripped and held in a holding cell, but was allowed to maintain possession of his Muslim prayer beads, initially. *Id*. at 6. Later, a Field Force Officer (a group of correctional officers assisting with the searches), came by the holding cell and demanded Plaintiff relinquish possession of his prayer beads. *Id*. Plaintiff did so. *Id*.

While handcuffed and being escorted back to his cell by other correctional officers (Flores and an unidentified officer), Plaintiff claims that he passed by Defendant Garcia, who verbally taunted him by asking him where his prayer beads were, while using a racial slur to describe the beads. *Id*. Plaintiff acknowledges he then verbally taunted Defendant Garcia. *Id*.

Plaintiff then alleges that Defendant Garcia struck him in the face with a closed fist three to five times, while he was handcuffed. *Id.* Plaintiff claims that he "made no aggressive moves"

toward Defendant Garcia, but that "even if he had made aggressive moves," punching him while restrained was excessive. *Id*. at 7.

Plaintiff claims that Defendant Herrera, who escorted him back to his cell, along with another correctional officer after the incident, did nothing to stop the assault. *Id*. Further, Plaintiff claims that, following the incident, Defendant Herrera told Defendant Garcia to write up a statement claiming that Plaintiff had "broke line" and "charged" at Defendant Garcia. *Id*. Defendant Garcia made a written statement claiming that Plaintiff asked him if he had confiscated his prayer beads and when Defendant Garcia responded, "yes, it was an altered item," Plaintiff lunged toward Defendant Garcia and spit at him, and he was forced to punch Plaintiff "three times" with a "tight fist." (ECF 22-1 at 10). Officer Flores, who was present during the incident, also gave a written statement affirming all aspects of Defendant Garcia's account of the incident. *Id*. at 12. By the time that the use of force team arrived on the scene, correctional officer Flores and Defendant Garcia had Plaintiff restrained against the wall and subdued, and the video camera did not record any further use of force. No video footage exists of the use of force challenged, but no physical injuries are readily apparent on the Plaintiff in the video taken after the incident. (ECF 23, Use of Force Video).

Plaintiff claims he suffered intense pain "like electric shocks" when Defendant Garcia punched him, and that he later suffered from headaches and a concussion following the incident. (ECF 3 at 6–7). Plaintiff was seen by medical personnel immediately following the incident, and no injuries were visible although Plaintiff complained he was in pain. (ECF 3 at 7; 22-1 at 21). Plaintiff asserts that he could not "feel" his injuries immediately following the incident when seen by the medical staff because "the adrenaline was still flowing." (ECF 3 at 7). Plaintiff claims it was later that he began vomiting and he says he "sustained a concussion," although there are no

medical records to sustain this claim. *Id*. Plaintiff also received follow-up dental appointments and was prescribed pain killers for tooth pain. (ECF 22-2 at 42–43). Additionally, Defendant Garcia was seen by medical personnel and had teeth marks on his right hand, but no puncture wounds. (ECF 22-1 at 26).

Plaintiff was charged and convicted of the disciplinary offense of Assaulting an Officer without a Weapon. (ECF 22-2 at 24–25, 31). During his hearing, Plaintiff claimed he "didn't remember anything about spitting" but acknowledged he verbally taunted Defendant Garcia. *Id*. at 35. There is nothing in the record to indicate that Plaintiff has challenged his disciplinary conviction, and Plaintiff did not file a Response to the summary judgment motion or evidence.

## II.   PLAINTIFF'S ALLEGATIONS

Plaintiff contends that his federal constitutional rights were violated in the following ways:

1. Plaintiff's Eighth Amendment rights were violated when Defendant Garcia used excessive force against him.

2. Plaintiff's Eighth Amendment rights were violated when Defendant Herrera failed to intervene in the use of force and when he told Defendant Garcia to falsify a disciplinary case.

3. Plaintiff's conspiracy claims were previously dismissed.

(ECF 3 at 4–8).

## III.   STANDARD OF REVIEW

In a civil case, "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." FED. R. CIV. PROC. 56(b). When a summary judgment movant does not have the burden of proof on a claim, it can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go beyond its pleadings and designate specific facts

demonstrating that there is a genuine issue of material fact for trial. *See id.* at 324–25; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). A genuine issue of material fact exists if the evidence is such that a reasonable trier of fact could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F. Supp. 2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Specifically, when qualified immunity has been raised, "[t]he moving party is not required to meet [his] summary judgment burden for a claim of immunity." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks omitted) (citing *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)). Instead, "[i]t is sufficient that the movant in good faith pleads that [he] is entitled to qualified immunity. Once [he] asserts this affirmative defense, the burden shifts to the plaintiff to rebut it." *Id.* (internal quotation marks and emphasis omitted); *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (stating that "[o]nce qualified immunity is asserted, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense"); *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (noting that when a government official pleads qualified immunity, the plaintiff must "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct").

Once the burden of proof shifts to a plaintiff, the plaintiff must negate qualified immunity. *Brown*, 623 F.3d at 253. This burden is not satisfied through a mere showing of "some metaphysical doubt as to the material facts" or by "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, on summary judgment, "the plaintiff can no longer rest on the pleadings . . . [, ]and the court looks to the evidence before it. . . ." *McClendon*, 305 F.3d at 323 (internal quotation marks omitted) (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). However, the court looks to this evidence "in the light most favorable to the plaintiff," *id.*, with "all inferences . . . drawn in his favor." *Brown*, 623 F.3d at 253.

### IV. **MERITS**

Defendants Garcia and Herrera have asserted entitlement to qualified immunity in the Joint Motion for Summary Judgment. (ECF 21 at 2). Pursuant to 42 U.S.C. § 1983, private citizens may sue public officials in federal courts for violations of federal statutory or constitutional rights that those officials have committed against them. *See Monroe v. Pape*, 365 U.S. 167, 171 (1961). However, public officials enjoy an immunity from liability under section 1983 known as *qualified immunity*. When properly applied to public officials, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity serves several important goals. Perhaps most crucially, courts have expressed a concern over "the deterrent effect that civil liability may have on the willingness of public officials to fully discharge their professional duties." *Sanchez v. Swyden*, 131 F.3d 1144, 1148–49 (5th Cir. 1998) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967); *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982); and *Scheuer v. Rhodes*,

416 U.S. 232, 239–41 (1974)). Qualified immunity therefore counters this deterrent by helping to protect public officials from liability. Additionally, qualified immunity helps to "avoid excessive disruption of government." *Malley*, 475 U.S. at 341 (internal quotation marks omitted). To this end, qualified immunity serves to terminate a claim against a public official as soon as possible in a judicial proceeding, even before discovery, "and permit the resolution of many insubstantial claims on summary judgment." *Id.*; *see Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (quoting *Harlow*, 457 U.S. at 818).

The Supreme Court has articulated a two-part test for determining if a "public official" is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). First, a court must determine whether the defendant's conduct violated a federal right. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Second, a court must determine "whether the right in question was 'clearly established' at the time of the violation." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

Regarding the second part, "[g]overnmental actors are shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* More precisely, for a violation of clearly established federal rights to occur, "[p]re-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *See Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (emphasis in original omitted). If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact. *See Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (citing *Malley*, 475 U.S. at 341). In essence, "the salient question . . . is whether the state of the law" at the time of an incident provided 'fair warning' to the defendants 'that their

alleged [conduct] was unconstitutional.' *Tolan*, 572 U.S. at 656 (citing *Hope*, 536 U.S. at 741). Finally, in order to qualify as "clearly established," the law in question should not be defined at a "high level of generality" but instead be "particularized to the facts of the case." *White v. Pauly*, --- U.S. ---, 137 S.Ct. 548, 552 (2017).

As stated earlier, a qualified immunity defense alters the usual summary judgment burden of proof. *Brown*, 623 F.3d at 253. If the moving party in a summary judgment motion "plead[s] his good-faith entitlement to qualified immunity, the burden of proof shifts to the non-moving party to rebut it. *See Hathaway*, 507 F.3d at 319. It is a plaintiff's burden to present evidence that a defendant is not entitled to qualified immunity when that defense is raised. *See Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001). However, although "[t]he plaintiff bears the burden of negating qualified immunity, . . . all inferences are drawn in his favor." *Brown*, 623 F.3d at 253.

### A. Excessive Force (Defendant Garcia)

In addressing an excessive force claim brought under section 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. *Baker v. McCollan*, 443 U.S. 137, 140 (1979) ("The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged"). In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The validity of the claim must then be judged by reference to the specific constitutional standard that governs that right, rather than to some generalized "excessive force" standard. *Id.* (*cf. Tennessee v. Garner*, 471 U.S. 1 (1985) (claim of

excessive force to effect arrest analyzed under a Fourth Amendment standard); *Whitley v. Albers*, 475 U.S. 312 (1986) (claim of excessive force to subdue convicted prisoner analyzed under an Eighth Amendment standard)).

It is clearly established law that prison staff cannot cause the unnecessary and wanton infliction of pain. *Whitley*, 475 U.S. at 320. The "core judicial inquiry" into a plaintiff's claim of excessive force under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Martin v. Seal*, 510 F. App'x 309, 312 (5th Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). The inquiry has two components: (1) an objective one that focuses on whether the alleged wrongdoing was nontrivial and harmful enough to violate the constitution and (2) a subjective one that focuses on the mental state of the alleged wrongdoer. *Hudson*, 503 U.S. at 7-8. The courts look to five nonexclusive factors to make this determination:

1. the extent of the injury suffered;
2. the need for the application of force;
3. the relationship between this need and the amount of force used;
4. the threat reasonably perceived by the responsible officials; and
5. any efforts made to temper the severity of a forceful response.

*Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998) (citing *Hudson*, 503 U.S. at 7). The Court can consider these factors in any order. *Id*. "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.' " *Deville*, 567 F.3d at 167 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Thus, the Court will analyze the *Hudson* factors as applied to Plaintiff's claims.

*1.  The Extent of the Injury Suffered*

The Eighth Amendment's prohibition of cruel and unusual punishment "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use

of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10. The Fifth Circuit has expressly held that a plaintiff bringing an Eighth Amendment excessive use of force claim against a correctional officer must show injuries that are more than *de minimis*, that is, the plaintiff's injuries must be "significant, serious, or more than minor." *Id.* at 9-10 ("The Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' ").

Although a showing of "significant injury" is no longer required in the context of an excessive force claim, "we do require a plaintiff asserting an excessive force claim to have 'suffered at least some form of injury.' " *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)) (quoting *Jackson v. R.E. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993)). The injury must be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed. *Glenn*, 242 F.3d at 314. "In *Williams*, for example, this court held that the loss of breath and dizziness suffered when the suspect was allegedly choked while an officer searched his mouth did not amount to an [sic] cognizable injury." *Id*. "This court stated that '[w]henever a detainee is physically searched by an officer, a physical confrontation inevitably results' and therefore concluded that fleeting dizziness, temporary loss of breath, and coughing did not rise to the level of a constitutional violation." *Id*. (citing *Williams* 180 F.3d at 704). However, when force employed and resultant injury is unrelated to the necessary force required to restore order and is motivated instead by malice, such injury is never *de minimus*. *Id*.

One way to distinguish if an injury is "*de minimus*" is to consider whether medical care and treatment was needed to treat the injury. *See Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir.

1999). In *Gomez*, the court determined that the plaintiff "did not seek or receive medical treatment" for his alleged injury, and his injury was considered *de minimus* as follows:

> In *Siglar*, we described the complained of conduct and injury as follows: "[the corrections officer] twisted Siglar's arm behind his back and twisted Siglar's ear. Siglar's ear was bruised and sore for three days but he did not seek or receive medical treatment for any physical injury resulting from the incident. There is no allegation that he sustained long term damage to his ear." [*Siglar v. Hightower*, 112 F.3d 191, (5th Cir. 1997)]. We stated that these allegations presented the question "whether Siglar's bruised ear amounts to a 'physical injury' that can serve as the basis for his excessive force" claim, and concluded that because "Siglar's alleged injury—a sore, bruised ear lasting for three days—was *de minimis* " he had therefore "not raised a valid Eighth Amendment claim for excessive force." *Id*.

*Gomez*, 163 F.3d at 924.

As evidenced by the medical records, Plaintiff did not present with any injuries when treated by medical personnel immediately following the incident. (ECF 22-1 at 21). However, Plaintiff claims that he suffered from intense pain during the use of force, as well as from continued tooth pain (for which he did receive pain medication following the incident). (ECF 22-2 at 42–43). Thus, because Plaintiff has alleged some injury that required some medical treatment, and because it is undisputed that he was struck in the face with a closed fist three times, presumably while handcuffed, the Court does not consider the absence of visible injuries to indicate a *de minimus* injury that would be insufficient to state a cause of action for excessive force. That said, the presence of *some* injury is likely the result of Plaintiff's instigating the use of force.

   2. *The Need for the Application of Force*

Plaintiff claims he only verbally taunted Officer Garcia and did not lunge toward him and "does not remember" spitting at him during this incident. (ECF 3 at 6; ECF 22-2 at 35). However, the competent summary judgment evidence indicates that Plaintiff was convicted of the disciplinary offense of Assaulting an Officer without a Weapon (ECF 22-2 at 24–25, 31). Further,

his phrasing in both his Complaint ("even if I had lunged at him") and during his disciplinary hearing ("I don't remember spitting"), along with his acknowledgement throughout his Complaint that he verbally taunted Defendant Garcia and had previously refused to obey orders regarding the search, indicate that some force was necessary in response to the threat perceived by Officer Garcia. Additionally, Officer Flores, who was not named as a defendant, gave an accounting of Plaintiff's behavior that coincides with the account by Defendants Garcia and Herrera. (ECF 22-1 at 12). Thus, the Court finds some force was needed in response to Plaintiff's assault.

   3. *Relationship between Need for Force and Amount of Force Used*

Defendant Garcia acknowledged that he struck Plaintiff in the face with a closed fist three times, which coincides with the account given by Plaintiff. (ECF 22-1 at 10; ECF 3 at 6). The Court finds that three strikes with a closed fist, when the Plaintiff was in the process of assaulting Officer Garcia by spitting on him and lunging toward him, is not excessive. *See Yarborough v. Loftis*, No. 6:14-CV-950, 2017 WL 9288033, at *6 (E.D. Tex. Oct. 18, 2017), *report and recommendation adopted*, No. 6:14-CV-950, 2018 WL 387910 (E.D. Tex. Jan. 12, 2018) (finding that officer's use of force in striking an inmate multiple times, when inmate spit on officer and continued to move toward officer, was not excessive to the need.).

   4. *The Threat Perceived by Officers*

Plaintiff stands convicted of assaulting Defendant Garcia without a weapon. The Court cannot grant any monetary relief to Plaintiff that would necessarily invalidate his disciplinary conviction. To any extent Plaintiff is requesting monetary damages, such claims are frivolous until the *Heck* conditions are met. The Supreme Court has held that a section 1983 claim that attacks the constitutionality of a conviction (or imprisonment, as the case may be, does not accrue until that conviction (or sentence) has been "reversed on direct appeal, expunged by executive order,

declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477 (1994); *see also Wells v. Bonner*, 45 F.3d 90, 94 (5th Cir. 1995). In *Edwards v. Balisok*, the Supreme Court approved the application of the Heck doctrine to the prison disciplinary setting. *Edwards v. Balisok*, 520 U.S. 641 (1997). Any attempt by Plaintiff to argue that no threat was perceived by Defendant Garcia would necessarily invalidate Plaintiff's disciplinary conviction.

   5. *Efforts to Temper Force*

The competent summary judgment evidence indicates that after the three strikes, Defendant Garcia and Officer Flores restrained Plaintiff against the wall by holding his arms and keeping him penned to the wall. (ECF 22-1 at 12–14). When other officers arrived at the scene, they verbally warned him to comply with all orders until they had secured his ankles in additional restraints, and no further force was used. *Id*. Although Plaintiff argues he was handcuffed at the time of the incident and the typical first step in a use of force is chemical weapons, the Court finds there was not time to employ such tactics in response to an immediate threat. Thus, Defendant Garcia tempered his force by ceasing striking the Plaintiff upon gaining control of him against a wall.

The Court determines that, applying the *Hudson* factors to the use of force against Plaintiff, Defendant Garcia is entitled to qualified immunity. The Court determines that Plaintiff failed to create a genuine issue of material fact that the amount of force used was excessive to the need to use force.

   **B. Failure to Intervene in Use of Force & False Reporting (Defendant Herrera)**

The Eighth Amendment prohibits the infliction of cruel and unusual punishments, and "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002)

(citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The treatment and the confinement conditions to which the Eighth Amendment applies include both the safety and the health of prisoners. *Id*.

The failure to protect an inmate from the use of excessive force by others can also be an Eighth Amendment violation that may give rise to liability under Section 1983. *See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (An officer may be liable under 42 U.S.C. section 1983 if she is "present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force.")

But "this 'bystander' liability obtains only if the bystander defendant had reasonable opportunity to intercede and prevent the constitutional violation." *Rogers v. Buchanan*, No. 3:12-CV-2458-M-BN, 2015 WL 3439145, at *5–6 (N.D. Tex. Mar. 27, 2015), *report and recommendation adopted as modified*, No. 3:12-CV-2458-M-BN, 2015 WL 3504518 (N.D. Tex. May 28, 2015) (citing *Blacke v. City of Galveston*, Tex., No. 10–cv–388, 2014 WL 794025, at *8 (S.D. Tex. Feb. 27, 2014) (citing *Spencer v. Rau*, 542 F.Supp.2d 583, 594 (W.D. Tex. 2007) (citing *Davis v. Rennie*, 264 F.3d 86, 97–98 (1st Cir. 2001) (holding that an officer can be held liable under Section 1983 for failure to intervene "if the defendant was present when the force was used, observed the use of excessive force, was in a position where he could realistically prevent the force, and had sufficient time to prevent it")))).

The "reasonable opportunity to intercede and prevent the constitutional violation" is "[t]he focus of the bystander-liability inquiry." *Rogers*, 2015 WL 3439145 at *5 (citing *Malone v. City of Fort Worth, Tex.*, No. 4:09–cv–634–Y, 2014 WL 5781001, at *16 (N.D. Tex. Nov. 6, 2014); *Terrell v. Castleberry*, Civ. A. No. H–06–2025, 2008 WL 687519, at *5 (S.D. Tex. Mar. 12, 2008) ("A prison guard has a duty to intervene and attempt to end an assault on an inmate. The rationale

underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer.")). Thus, "an officer may be liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.' " *Rogers*, 2015 WL 3439145 at \*6 (citing *Malone*, 2014 WL 5781001, at \*16 (quoting *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013))).

The Court determines that Defendant Herrera is entitled to qualified immunity on Plaintiff's failure to protect claim because there is no competent summary judgment evidence that the force used against Plaintiff was excessive to the need.

Plaintiff also claims that Defendant Herrera told Defendant Garcia to file a "false" disciplinary case against him. However, Plaintiff remains convicted of the disciplinary offense, and, as outlined above, this claim is frivolous as barred by *Heck*.

### C. Failure to Exhaust Administrative Remedies

"Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin Cnty. Welcome Center v. Brown*, 466 U.S. 147, 152 (1984). "In the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Id*. (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)). Under the Prison Litigation Reform Act ("PLRA") "no action shall be brought with respect to prison conditions…by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA pre-filing exhaustion requirement is mandatory and non-discretionary." *Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012).

The Fifth Circuit has approved of using summary judgment to "address exhaustion and other affirmative defenses not enumerated in Rule 12(b)." *Dillion v. Rogers*, 596 F.3d 260 (5th Cir. 2010) (comparing *Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1019 (5th Cir. 2009) (affirming summary judgment dismissal for failure to exhaust) and *Hager v. NationsBank N.A.*, 167 F.3d 245, 247-48 & n.1 (5th Cir. 1999) (approving of district court's granting plaintiff "procedural safeguards of Rule 56" after defendant moved to dismiss for failure to exhaust *and relied on affidavits* to support factual allegations) with *Carpenters Local Union No. 1846 v. Pratt-Farnsworth. Inc.*, 690 F.2d 489, 527-29 (5th Cir. 1982) (genuine issue of material fact prevents dismissal on summary judgment for failure to exhaust)).

"In determining exhaustion under the PLRA, we look to the processes established by the prison and the parties' use of these processes, beginning with the sufficiency of the inmate's 'complaint.'" *Moussazadeh v. Texas Dep't of Criminal Justice*, 703 F.3d 781, 788 (5th Cir. 2012) (citing *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004)). The complaint must give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 788 (citing *Porter v. Nussle*, 534 U.S. 516, 525 (2002)).

Here, Plaintiff filed only a Step 1 grievance in response to the use of force incident in question, and never followed up with a Step 2 grievance, as required. (ECF 22-2 at 53–54). As such, Plaintiff's claims against Defendant's Garcia and Herrera should also be dismissed for failure to exhaust administrative remedies.[1]

### V.   RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Joint Motion for Summary Judgment filed by Defendants Garcia and

---

[1] Plaintiff's conspiracy claims and claims against Defendant Richardson were previously dismissed.

Herrera be GRANTED, and Plaintiff's Complaint should be DISMISSED with prejudice.

## VI.   INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED January 6, 2021.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).